The NEW YORK STATE TEAMSTERS COUNCIL HEALTH AND HOSPITAL FUND, and Everett L. Campbell, James M. Carlton, James A. Hood, Victor C. Olivadoti, John Pryshlak, Nicholas Robilotto and Ervin Walker, as Trustees of the New York State Teamsters Council Health and Hospital Fund, Plaintiffs,

v.

The ESTATE OF Rocco F. DePERNO, Rocco A. DePerno, and Patricia DePerno, Defendants.

No. 88–CV–1035.

United States District Court, N.D. New York.

March 5, 1993.

Morgan, Lewis & Bockius, Washington, DC (Peter Buscemi, of counsel), for plaintiffs.

Emil M. Rossi, Syracuse, NY (Michael J. Vavonese, Roger W. Bradley, of counsel), for defendants.

## MEMORANDUM–DECISION AND ORDER

HURD, United States Magistrate Judge.

I. *Introduction.*

This action was commenced on October 4, 1988, by plaintiffs alleging violations of the Employee Retirement Income Security Act ("ERISA"), §§ 404(a)(1)(A)(i), 404(a)(1)(B), 406(a)(1)(C) and (D), 406(b)(1) and (2); codified at 29 U.S.C. §§ 1104(a)(1)(A)(i) and 1104(a)(1)(B), 1106(a)(1)(C) and (D), and 1106(b)(1) and (2), during the period of October 1981, through March 1986. They seek damages pursuant to ERISA § 409(a) (29 U.S.C. § 1109(a)).

The *first* cause of action is against defendants The Estate of Rocco F. DePerno ("Trustee DePerno") and Rocco A. DePerno ("Attorney DePerno"), alleging violations of ERISA § 404(a)(1)(A)(i) (29 U.S.C. § 1104(a)(1)(A)(i)), arising out of an alleged breach of their fiduciary duties, when several cooks were hired from Attorney DePerno's restaurant to work as maintenance men at the administrative office of the New York State Teamsters Council Health and Hospital Fund ("Fund").

The *second* cause of action has been discontinued.

The *third* cause of action is against Attorney DePerno and Patricia A. DePerno ("Mrs. DePerno"), alleging that they participated in Trustee DePerno's breach of his fiduciary duties under ERISA § 404(a)(1) (29 U.S.C. § 1104(a)(1)). *See* Plaintiffs' First Cause of Action.

The *fourth* cause of action is against Trustee DePerno and Attorney DePerno, alleging violations of ERISA § 406(a)(1)(C) and (D) (29 U.S.C. § 1106(a)(1)(C) & (D)) by causing the Fund to engage in a prohibited transaction.

The *fifth* cause of action is against Attorney DePerno and Mrs. DePerno, alleging violations of ERISA § 406(a)(1)(C) and (D) (29 U.S.C. § 1106(a)(1)(C) and (D)) as parties in interest by causing the Fund to engage in a prohibited transaction.

The *sixth* cause of action against Trustee DePerno and Attorney DePerno, alleges violations of ERISA § 406(b)(1) & (2) (29 U.S.C. § 1106(b)(1) and (2)) as fiduciaries in dealing with the assets of the plan in their own interest on behalf of parties whose interests were adverse to the Fund.

Defendants have denied the material allegations of the complaint and asserted the Statute of Limitations as an affirmative defense to all claims arising prior to October 4, 1985.

The court conducted a four day bench trial at Utica, New York. Post trial briefs were filed by the parties. The following Memorandum–Decision and Order constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## II. *Parties.*

Plaintiff, the Fund, is an employee benefit fund organized under Section 302(c)(5) of the Taft–Hartley Act, 29 U.S.C. § 186(c)(5). The Fund is an employee benefit plan as defined in ERISA § 402(1) (29 U.S.C. § 1102(1)), and is therefore subject to ERISA. The Fund provides health and welfare benefits to Teamster-represented employees, dependents, and retirees in New York State and elsewhere.

The Fund is governed by the Board of Trustees ("Trustees") which consists of an equal number of union and employer members, and is run on a day-to-day basis by an Executive Administrator who reports to the Trustees. The individual plaintiffs are past or present members of the Trustees. The Fund along with the Pension and Retirement Fund ("Pension Fund") have their headquarters in an office building located at 7 Rutger Park, Utica, New York. The building is owned jointly by the two Funds, and the Funds share equally in the expenses of maintaining the building. Among other things, the two Funds split the cost of maintenance employees' salaries and benefits.

Trustee DePerno served as a trustee of the Fund from the time of the Fund's inception in approximately 1954 until his death on October 7, 1986. Trustee DePerno was the senior member of the Trustees. In addition to his role as a trustee of the Fund, Trustee DePerno was also a trustee of numerous other Teamster funds, including the Pension Fund; the Local 182 Health and Welfare Trust Fund; the New York State Group Legal Fund; the Milk Plant Employee Health and Welfare Trust Fund; and the Upstate Teamsters Pension and Retirement Fund. Trustee DePerno was also the president of Teamsters Local 182 in Utica, New York, for approximately fifty years. Finally, for many years he was the president of the New York State Teamsters Joint Council 18, a group of Teamster locals in Central New York state.

Attorney DePerno, a lawyer who has been practicing law for more than twenty years, was Trustee DePerno's son. In 1972 or 1973, Attorney DePerno became counsel to the Pension Fund, and in 1977 or 1978, he became counsel to the Fund. Attorney DePerno remained counsel to the Fund throughout the time period relevant to this lawsuit. In addition, Attorney DePerno served as counsel to numerous other Teamster entities, including the Upstate Teamsters Pension and Retirement Fund; the Teamsters Local 182 Health and Welfare Trust Fund; the Milk Plant Employees Health and Welfare Trust Fund; the New York State Teamsters Group Legal Fund; Joint Council 18; the Joint Council 18 Federal Credit Union; Teamsters Local 182 in Utica; and several other Teamsters' locals in upstate New York. In addition, from approximately 1980 to December 1987, Attorney DePerno owned a restaurant known as the Sea Shell Inn ("Inn").

Mrs. DePerno is Attorney DePerno's wife, and was Trustee DePerno's daughter-in-law. She participated with her husband in operating the Inn.

The Inn was a seasonal restaurant in Verona Beach, New York. During the time period in question, the restaurant was generally open for business from March or April through September or October of each year. The restaurant was destroyed by fire in December 1987.

## III. *Facts.*

The suit alleges that for five consecutive years, from 1981 through 1986, two cooks from the Inn were employed in the winter as maintenance men at the Health and Hospital Fund and Pension Fund building, in violation

of ERISA.[1] The following chart summarizes the evidence in the record regarding the employment of the Inn cooks by the Inn and the Fund:

| COOK | INN | | | FUND | | |
|---|---|---|---|---|---|---|
| | | | | | | |

| COOK | INN | | | FUND | | |
|---|---|---|---|---|---|---|
| Charles DeCosty | 4/19/81 | to | 9/20/81 | 9/29/81 | to | 3/5/82 |
| | 4/82 | to | 9/30/82 | 10/11/82 | to | 3/10/83 |
| | 4/1/83 | to | 9/30/83 | 10/17/83 | to | 3/30/84 |
| | 4/1/84 | to | 5/84 | | | |
| Joseph Longo | 1981 | | | 12/29/81 | to | 3/24/82 |
| | 1982. | | | 10/4/82 | to | 3/11/83 |
| | 3/15/83 | to | 9/30/83 | 10/17/83 | to | 3/7/84 |
| | 4/15/84 | to | 5/84 | | | |
| William Dyer | 5/15/84 | to | 9/30/84 | 10/15/84 | to | 3/22/85 |
| | 4/10/85 | to | 9/30/85 | 10/9/85 | to | 4/3/86 |
| | 4/10/86 | to | | | | |
| John VandenBosch | 6/28/84 | to | 9/84 | 10/16/84 | to | 3/28/85 |
| | 4/10/85 | to | 9/30/85 | 10/8/85 | to | 4/4/86 |
| | 4/15/86 | — | 8/87 | | | |

It is plaintiffs' contention that these cooks—the two hired in the winter months of 1981–1983 (Mr. DeCosty and Mr. Longo), and their two replacements (Mr. Dyer and Mr. VandenBosch) who were hired in 1984–1985—were only hired by the Fund so Attorney DePerno would be guaranteed that they would return to the Inn in the summer. Plaintiffs also contend that they were unnecessary for the maintenance of the Fund's building. Specifically, plaintiffs allege that from the winter of 1985–86, and subsequent to the death of Trustee DePerno, the Fund never again needed to hire additional maintenance men in the winter months, and that the two full-time employees were all that was ever required to meet the demands of the building, during both the winter and summer months.

The defendants claim that the cooks performed necessary work for the Fund, that the compensation paid was reasonable, that the hiring of the cooks was for the exclusive benefit of the Fund, and that the hiring and payment to the cooks was prudent for the Fund and was performed solely in the Fund's interest. Defendants claim that winter poses special problems which necessitates the need for additional workers, and that although the Fund has never replaced these workers, their tasks are now performed through more costly methods, such as independent contractors and overtime pay to the existing employees. Further, they claim that in 1981, Carmen DePerno,[2] threatened to quit unless the Fund hired additional employees for the winter months.

The Inn generally employed four cooks and fifteen to twenty-five other employees. With the exception of the two cooks hired each winter by the Fund, no other employees of the Inn were hired in the off-season. The Inn was able to find replacement workers, including cooks, on short notice.

In the summer of 1981, Attorney DePerno learned that his Uncle Carmen needed help in the maintenance department. He advised the cooks and other Inn employees that if they wished to work over the winter, they should let him know. When two cooks, DeCosty and Longo, expressed an interest in a

1. Although the maintenance men were employed jointly by both Funds, and the Pension Fund shared the costs equally, it has not joined in this action.

2. Carmen DePerno, who was Trustee DePerno's brother and is Attorney DePerno's uncle, at the time was head of the Security and Maintenance Department at the Fund's administrative office.

winter job, Attorney DePerno told his father.[3] The cooks were advised to see Carmen DePerno, and were hired at the direction of Trustee DePerno. The following years the cooks were often hired by the Fund without any direct contact with either Trustee or Attorney DePerno. They were just sent down to see "Uncle Carmen." It became an understanding that if a cook wished to have winter employment as a maintenance worker at the Fund, he should see Carmen DePerno. The four cooks that did so were all given jobs. In the spring they would contact Attorney or Mrs. DePerno and return to the Inn.

One fact is abundantly clear. No cook was hired without the express approval of Trustee DePerno. He was the person who actually ran the Fund. Attorney DePerno informally assisted the cooks in obtaining employment if they so desired. The cooks did work as maintenance men. These were not "no show" jobs. Each cook was required to do actual maintenance work, and they were paid only for the actual hours they worked.

This arrangement was known from the start by Mr. Al Sgaglione, the Executive Administrator of the Fund. Although he initially protested to Trustee DePerno, he was told that it was up to Carmen and that he should not interfere. He remained quiet until shortly before Trustee DePerno's death. There is no evidence that any of the Trustees (except, of course, Trustee DePerno) had actual knowledge of the practice until advised by Mr. Sgaglione in August or September 1986. However, the practice was not concealed by the DePernos, the cooks, or anyone else. It was an arrangement that was open to anyone who might have been interested.

## IV. *Discussion.*

"ERISA is a comprehensive statute enacted to protect the interests of participants in employee benefit plans and their beneficiaries." *Joint Apprenticeship and Training Council of Local 363 v. New York State Dep't of Labor,* 984 F.2d 589, 591 (2d Cir.1993). ERISA establishes standards of conduct, re-

sponsibility, and obligations for fiduciaries of employee benefit plans, and provides for appropriate remedies, sanctions, and ready access to the Federal courts. ERISA § 2(b) (29 U.S.C. § 1001(b)); *see also Massachusetts v. Morash,* 490 U.S. 107, 113, 109 S.Ct. 1668, 1671–72, 104 L.Ed.2d 98 (1989). The defendants first claim that this action is barred by the applicable statute of limitations.

### A. *Statute of Limitations.*

The Statute of Limitations under ERISA § 413 (29 U.S.C. § 1113) provides, in part, that:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of:
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation; or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.

The Statute is clear that actual knowledge of the fiduciary breach is required before the three year limitation period begins to run. "[T]he key to the ERISA statute of limitations ... is 'actual knowledge' of the ERISA breach or violation." *Ziegler v. Connecticut General Life Ins. Co.,* 916 F.2d 548, 552 (9th Cir.1990). "ERISA requires actual knowledge of all the elements of the violation alleged here." *Gluck v. Unisys Corp.,* 960 F.2d 1168, 1176 (3d Cir.1992). The three year statute of limitations is an exception to the six year time period. "The six year time period reflects Congress' determination to impress upon those vested with control of pension funds the importance of the trust they hold. Thus, Congress evidently did not desire that those who violate the trust could easily find refuge in a time bar." *Brock v.*

---

**3.** Longo worked for UPS for a short period of time between the seasonal closing of the Inn and

the Fund.

*Nellis,* 809 F.2d 753, 754 (11th Cir.), *cert. dismissed,* 483 U.S. 1057, 108 S.Ct. 33, 97 L.Ed.2d 821 (1987).

"[A] plaintiff may have constructive knowledge of a breach before he actually knows of the breach, but section 1113 calls for actual knowledge." *Gluck,* 960 F.2d at 1176; *see also Rogers v. Millan,* 902 F.2d 34 (6th Cir. 1990), *reported in full,* No. 89–3707, 1990 WL 61120, 1990 U.S.App. LEXIS 7607 (6th Cir. 1990) (noting that constructive knowledge of an ERISA violation is insufficient to invoke the actual knowledge exception); *Radiology Center, S.C. v. Stifel, Nicolaus & Co.,* 919 F.2d 1216, 1222 (7th Cir.1990) (three year statute of limitation "speaks solely in terms of *actual,* not constructive, knowledge."); *Brock,* 809 F.2d at 754–55 (three year provision in § 1113 does not incorporate theory of constructive knowledge).

■ In view of the strict standard of the statute, the knowledge of Mr. Sgaglione as Executive Administrator of the Fund, or other employees of the Fund, that the Inn cooks were working at the Fund building in the wintertime,[4] can not be read to impart "actual" knowledge of a fiduciary breach to the Trustees. It can only imply constructive knowledge. This is insufficient to begin the running of the three year statute. The Trustees did not obtain actual knowledge of this practice until August or September 1986. This action was commenced on October 4, 1988. Therefore, since this suit was commenced within six years of "the last action [April 1986] which constituted a part of the breach or violation," and/or within three years of "actual knowledge [August or September 1986]," of the Trustees, it is timely.

B. *Rocco F. DePerno, Trustee.*

1. *First Cause of Action.*

ERISA § 404(a) (29 U.S.C. § 1104(a)) states, in part, that:

(1) [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims....

Plaintiffs allege that Trustee DePerno did not act solely for the benefit of the Fund, and thus violated his fiduciary duty under this section, when he hired the cooks from the Inn to work as maintenance men at the Fund's administrative office. The defendants argue that the hiring of the cooks was necessary, and therefore, Trustee DePerno did not violate this section, because under such circumstances, such hiring was justified and prudent.

The statutory phrase "solely in the interest of the participants and beneficiaries" is a codification of the most fundamental duty traditionally owed by a fiduciary—the duty of skill and loyalty. *Financial Inst. Retirement Fund v. Office of Thrift Supervision,* 964 F.2d 142, 148 (2d Cir.1992); *see Donovan v. Bierwirth,* 680 F.2d 263, 270–271 (2d Cir. 1982), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982); *Kirshner v. United States,* 603 F.2d 234, 242 (2d Cir. 1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979).

■ Trustee DePerno was a fiduciary to the Fund. ERISA § 3(21)(A) (29 U.S.C. § 1002(21)(A)). He was the one who actually authorized the hiring of the cooks each fall. As employees of Attorney DePerno, the cooks were parties in interest. ERISA § 3(14)(H) (29 U.S.C. § 1002(14)(H)). The hiring also benefitted parties in interest, to wit, the cooks. Whether or not the hirings were necessary is immaterial. In the operation of his fiduciary duty, a trustee must make his decisions "with an eye single to the interests of the participants and beneficia-

---

4. The Inn cooks were employed by the Fund year after year, beginning in September 1981, and ending in April 1986.

ries." *Bierwirth,* 680 F.2d at 271. Although a trustee does not violate his fiduciary duty "simply because [a decision] incidentally benefits," either a party in interest or the trustee himself, *Id.,* Trustee DePerno hired these men solely because they worked for his son. Other workers were undoubtedly available. The fact that Trustee DePerno caused to be hired parties in interest solely because they were employees of his son is sufficient to demonstrate that it was not "solely in the interests of the participant and beneficiary," and was not performed with "care, skill, prudence and diligence." *Katsaros v. Cody,* 744 F.2d 270, 279 (2d Cir.1984), *cert. denied, Cody v. Donovan,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984); *Morse v. Stanley,* 732 F.2d 1139, 1144 (2d Cir.1984). Trustee DePerno violated his fiduciary duties as set forth in ERISA § 404(a)(1) (29 U.S.C. § 1104(a)(1)), and is liable to the plaintiffs on the First Cause of Action.

### 2. Fourth Cause of Action.

ERISA § 406(a) (29 U.S.C. § 1106(a)) provides, in part, that:

Except as provided in Section 1108:

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect— ...

(C) furnishing of goods, services, or facilities between the plan and a party in interest;

(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan....

Plaintiffs allege that by hiring employees of Attorney DePerno, who was attorney for the Fund, Trustee DePerno violated this section since they were all parties in interest who benefitted from their respective positions. Defendants contend that the transactions at issue are exempted by law because the services were necessary.

■ Trustee DePerno's son and daughter-in-law were parties in interest. ERISA § 3(14)(B) and (F) (29 U.S.C. § 1002(14)(B) and (F)). As stated *supra,* the cooks, as employees of a party in interest (Attorney DePerno), were also parties in interest. ERISA § 3(14)(H) (29 U.S.C. § 1002(14)(H)). The hiring of the Inn cooks by the Fund was a prohibited transaction under ERISA § 406(a) (29 U.S.C. § 1106(a)). By causing the Fund to engage in that transaction, Trustee DePerno violated ERISA § 406(a)(1)(C) and (D) (29 U.S.C. § 1106(a)(1)(C) and (D)). "ERISA prohibits certain transactions because they inherently compromise the duty of trust that is imposed upon a fiduciary. 29 U.S.C. § 1106." *Beck v. Levering,* 947 F.2d 639, 641 (2d Cir.1991), *cert. denied, Levy v. Martin,* — U.S. —, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992); *Donovan v. Walton,* 609 F.Supp. 1221, 1229 (S.D.Fla.1985), *aff'd,* 794 F.2d 586 (11th Cir. 1986). The hiring of the cooks meant that parties in interest—the cooks—were providing services to the Fund, in violation of ERISA § 406(a)(1)(C) (29 U.S.C. § 1106(a)(1)(C)).

Trustee DePerno's repeated seasonal hiring of the cooks conferred a benefit on the cooks. The Fund was thus furnishing a service to parties in interest, also in violation of ERISA § 406(a)(1)(C) (29 U.S.C. § 1106(a)(1)(C)). *M. & R. Invest. Co. v. Fitzsimmons,* 484 F.Supp. 1041 (D.Nev.1980), *aff'd* 685 F.2d 283 (9th Cir.1982). Trustee DePerno's hiring of the cooks caused a transfer of assets of the Fund for the benefit of parties in interest, namely, the cooks. Such a use of fund assets is prohibited by ERISA § 406(a)(1)(D) (29 U.S.C. § 1106(a)(1)(D)). *Donovan v. Cunningham,* 716 F.2d 1455, 1465 (5th Cir.1983), *cert. denied,* 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984). The fact that Trustee DePerno received no material benefits is irrelevant. *Walton,* 609 F.Supp. at 1246 ("Absent a statutory or administrative exemption, plan fiduciaries are forbidden to cause a fund to engage in specified deals regardless of whether any harm actually results from the transaction."); *Marshall v. Kelly,* 465 F.Supp. 341, 354 (W.D.Okla.1978). Even if his only motive was to do a favor for his son and daughter-in-law, it still constituted a violation.

Trustee DePerno relies on ERISA § 408 (29 U.S.C. § 1108), which is the exception to ERISA § 406(a) (29 U.S.C. § 1106(a)).

ERISA § 408(b) (29 U.S.C. § 1108(b)) provides, in part, that:

> The prohibitions provided in Section 1106 shall not apply to any of the following transactions:
>
> .   .   .   .   .
>
> (2) contracting or making reasonable arrangements with a party in interest for . . . services necessary for the . . . operation of the plan, if no more than reasonable compensation is paid therefor.

He alleges that the cooks provided "services necessary for the operation" of the Fund, and that they were paid a reasonable fee. Furthermore, Trustee DePerno claims that additional maintenance personnel were needed in the winter months, and that although the Fund has never replaced these workers, their tasks are now performed through more costly methods such as independent contractors and overtime pay to the existing employees.

The burden of proof on the issue of whether or not these services were necessary is upon Trustee DePerno. *See Marshall v. Snyder,* 572 F.2d 894 (2d Cir.1978); *Donovan v. Daugherty,* 550 F.Supp. 390 (S.D.Ala. 1982); *Donovan v. Cunningham,* 541 F.Supp. 276 (S.D.Tex.1982), *aff'd in part, rev'd in part,* 716 F.2d 1455 (5th Cir.1983), *cert. denied,* 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984).

The evidence is clear that there were no "seasonal" maintenance men hired throughout the winter months before DeCosty and Longo in the fall of 1981, nor after Dyer and Vandenbosch terminated their employment in April 1986. Also, the number of hours allotted to maintenance during the five winter seasons in question were substantially higher than before or after, even taking into consideration overtime and remodeling work done by the "regular" maintenance men. Therefore, Trustee DePerno has not proven that additional maintenance workers were needed during the winter months.

More important, however, Trustee DePerno has completely failed to prove that it was "necessary for the . . . operation of the plan" to hire *these particular* cooks, who were parties in interest. The cooks possessed no unique or special qualities that made them indispensable for the job of maintenance men at the Fund building. If we had special persons for special jobs, the hiring of parties of interest would probably cause no problem. This is not the case. Here, we have regular men being hired by Trustee DePerno for a regular job who also just happened to be employed by his son. Numerous other men (or women) could have been hired for these jobs. This does not mean that the cooks did not actually work and provide services to the Fund. They did. The question is whether such services by these parties in interest were "necessary for the . . . operation of the plan." Trustee DePerno has failed to meet his burden in showing that they were.

Trustee DePerno points to Department of Labor Regulations which provide that services are necessary if they are "appropriate and helpful to the plan." 29 C.F.R. § 2550.408b–2. Although the services were helpful, the hiring of Attorney DePerno's cooks was clearly not appropriate. Therefore, Trustee DePerno has violated ERISA § 406(a)(1)(C) and (D) (29 U.S.C. § 1106(a)(1)(C) and (D)), and is liable to the plaintiffs on the Fourth Cause of Action.

### 3.  Sixth Cause of Action.

ERISA § 406(b) (29 U.S.C. § 1106(b)) provides, in part, that a fiduciary shall not:

> (1) deal with the assets of the plan in his own interest or for his own account,
>
> (2) in his individual or any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interest of the plan or the interests of its participants or beneficiaries. . . .

Plaintiffs contend that no exceptions apply to this section, and since no harm is required and the self-interest need not be monetary, transactions prohibited by this section are a per se violation of ERISA. Plaintiffs allege that Trustee DePerno had an "obvious interest" in the success of the Inn, and by hiring the cooks he was advancing his own interest in helping out his son and daughter-in-law. Plaintiffs also allege that Trustee DePerno acted adversely toward the Fund's interests

because the cooks were not necessary for the maintenance of the Fund's building. Trustee DePerno answers these claimed violations by asserting that the transactions did not serve any of his own interests. Moreover, he contends that the complaint fails to allege that any particular person holds an adverse interest between the transaction and the Fund.

The prohibitions of ERISA § 406(b) (29 U.S.C. § 1106(b)) also impose a duty of undivided loyalty on fiduciaries. *Gilliam v. Edwards*, 492 F.Supp. 1255, 1262–63 (D.N.J. 1980). The prohibitions of ERISA § 406(b) are intended to deter fiduciaries from exercising their authority when they have interests that may conflict with the interests of the plan. *Id.* (*citing* 29 C.F.R. § 2550.408b–2(e)(1)). A fiduciary is prohibited, therefore, from engaging in transactions that create a conflict of interest between himself and the plan to which he owes a duty of loyalty. *Whitfield v. Tomasso*, 682 F.Supp. 1287 (E.D.N.Y.1988).

> Section 406(b) protects beneficiaries by prohibiting transactions tainted by a conflict of interest ... [and] gives notice to fiduciaries that they must either avoid the transactions described in Section 406(b) or cease serving in their capacity as fiduciaries, no matter how sincerely they may believe that such transaction will benefit the plan. [L]iability [will] be imposed even when there is 'no hint of scandal, no hint of self-dealing [and] no trace of bad faith....'

*Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209, 1213 (2d Cir.1987).

■ Therefore, a violation of ERISA § 406(b)(1) (29 U.S.C. § 1106(b)(1)) occurs whenever a fiduciary deals with the assets of a plan in his own interest, *Id.*, and a financial loss to the fund is not required. *Brock v. Hendershott*, 840 F.2d 339 (6th Cir.1988). In addition, in *Leigh v. Engle*, 727 F.2d 113, 126 (7th Cir.1984), the court stated that "[i]n light of ERISA's broad language and protective provisions, ... we should read broadly the term 'interest' in Section 406(b)(1)." 727 F.2d at 127 (*cited in Lowen*; 829 F.2d at 1213). The court quoted with approval the following law review commentary:

> The absence of a direct financial interest in the transaction, however, should not preclude the application of this section to officer-trustees, as the prohibited transaction rules are designed to prevent the use of plan assets for any interest, financial or nonfinancial, other than an interest of the plan and its beneficiaries.

*Id.; quoting* Note, *The Duties of Employee Benefit Plan Trustees Under ERISA in Hostile Tender Offers*, 82 Colum.L.Rev. 1692, 1703 n. 51 (1982).

■ Trustee DePerno had an interest in the success of his son's restaurant and helping his son, when possible, to retain competent employees. By directing the hiring of the cooks, he used the Fund's assets to advance his interest of helping his son and daughter-in-law. Under the circumstances, the cooks and Attorney DePerno had interests, in the broad sense of the word, adverse to the plan. Again, even though this was only a favor to his son and daughter-in-law and he received no direct benefit, Trustee DePerno still violated ERISA § 406(b)(1) (29 U.S.C. § 1106(b)(1)), *see Brink v. DaLesio*, 496 F.Supp. 1350 (D.Md.1980), *aff'd in part, rev'd in part*, 667 F.2d 420 (4th Cir.1981); and is liable to the plaintiffs on the Sixth Cause of Action.

### C. *Rocco A. DePerno, Attorney.*

#### 1. *First Cause of Action.*

In this cause of action, the complaint alleges that "Attorney DePerno violated (his) fiduciary obligations to discharge (his) duties with respect to the Plan...." *Complaint*, ¶¶ 35 & 36. In alleging that he was a fiduciary, the complaint states that, "As counsel to the Health and Hospital Fund, Counsel DePerno exercised discretionary authority and control respecting management of such Plan, and was therefore, a fiduciary within the meaning of § 3(21)(A) of ERISA." *Complaint*, ¶ 5.

ERISA § 3(21)(A) (29 U.S.C. § 1002(21)(A)), states as follows:

A person is a fiduciary with respect to a Plan to the extent

(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any

authority or control respecting management or disposition of its assets;

(ii) he renders investment advice for fee or other compensation.... or

(iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

■ The court finds that Attorney DePerno was not a fiduciary. He acted as attorney for the Fund. He did not run the Fund on a day-to-day basis. This was performed by his father and Mr. Sgaglione, the Executive Administrator. He did not have any discretionary control or authority over the management or assets of the Fund. These duties were performed by his father and Mr. Sgaglione with the concurrence of the Trustees. Nor did he render investment advice. *Nieto v. Ecker,* 845 F.2d 868, 870 (9th Cir.1988) ("[A]n attorney rendering professional services to a plan is not a fiduciary as long as he does not exercise any authority over the plan 'in a manner other than by usual professional functions.'"); *Yeseta v. Baima,* 837 F.2d 380, 385 (9th Cir.1988) ("Status as an attorney [did not show] he controlled the Plan in a manner other than by usual professional functions."). Attorney DePerno only acted as attorney for this Fund and other union entities. He did not possess or exercise the discretionary powers or functions which would make him a fiduciary under ERISA. *See Bouton v. Thompson,* 764 F.Supp. 20, 22–23 (D.Conn.1991) (Attorney was considered a "fiduciary" within the meaning of ERISA because he exercised discretionary authority over pension plan assets.). It is interesting to note that the plaintiffs, in their post trial brief, did not claim Attorney DePerno was a fiduciary.

Because Attorney DePerno was not a fiduciary, the First Cause of Action is dismissed as against him.

## 2. Third Cause of Action.

In their Third Cause of Action, the plaintiffs claim that Attorney DePerno:

Knowingly participated in Trustee DePerno's breach of fiduciary obligation to discharge his duties with respect to the Plan solely in the interests of the participants and beneficiaries, and for the exclusive purpose of providing benefits to participants and their beneficiaries expecting what they would benefit as a result of his fiduciary duty.

*Complaint,* ¶ 41.

Attorney DePerno had acknowledged that he was a party in interest under ERISA § 3(14)(B) and (F) (29 U.S.C. § 1002(14)(B) and (F)). Even though he is not a fiduciary, the Second Circuit has held "that parties who knowingly participate in fiduciary breaches may be liable under ERISA to the same extent as the fiduciary." *Lowen,* 829 F.2d at 1220.

■ This court has ruled that Trustee DePerno breached his fiduciary duties in violating ERISA § 404 (29 U.S.C. § 1104)). The issue thus becomes whether Attorney DePerno knowingly participated in that breach. The court must conclude that he did.

Attorney DePerno is an attorney with vast experience in labor unions and funds. He either knew, or should have known, that it was improper for his father to hire his employees on a seasonal basis. The court does not believe that Attorney DePerno had any motive to harm the Fund, but "no intent to harm need be proven in connection with a knowing participation claim." *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 282 (2d Cir.1992). Not only did he know of the breach by his father, but he also participated by acting as the middleman between the cooks and his father and uncle. This is sufficient knowing participation to impose liability because his acts were clearly a proximate cause of his father's breach. *Id.,* at 284. If he had not sent the cooks to the Fund, they would never have been hired by his father. The cooks did not possess any special or unique qualities as maintenance men, so Attorney DePerno must have known that the only reason they were hired by his father was because they worked for him.

The benefits, if any, to Attorney DePerno, were miniscule. It is true that these cooks returned to the Inn after working at the Fund during the winter. This may have been of some convenience to him. However, there were other cooks at the Inn who never

worked for the Fund. There is no evidence that these individuals possessed any special or unique qualities as cooks. The plaintiffs attempt to characterize them as chefs. Webster's dictionary defines a chef as, "A skilled cook who manages the kitchen." The dictionary defines a cook as, "One who prepares food for eating." These men were cooks. They did not prepare the menu or special dishes. They were just part of the staff at the Inn. They were apparently interchangeable with numerous other cooks in the area. In fact, when Longo and DeCosty quit after working only one month in 1984, they were quickly replaced by Dyer and VandenBosch. The acts of Attorney DePerno would more properly be characterized as doing a favor to the cooks, and perhaps to his Uncle Carmen, without any real benefit to himself. However, the fact that Attorney DePerno did not benefit or profit from his father's breach will not defeat the imposition of responsibility to him. *Id.* He is liable to the plaintiff on the Third Cause of Action.

### 3. Fourth and Fifth Causes of Action.

■ The complaint in both of these causes of action are almost identical, and in essence, alleges that Attorney DePerno, as a non-fiduciary, assisted his father in engaging in a prohibited transaction in violation of ERISA § 406(a)(1)(C) and (D) (29 U.S.C. § 1106(a)(1)(C) and (D)). *Complaint* ¶¶ 43, 44, 46, and 47. The court has held that Trustee DePerno breached his fiduciary duty in this regard. Again, the question is, was Attorney DePerno a knowing participant?

As set forth above, the evidence is clear that Attorney DePerno knew, or should have known, that his father's hiring of the cooks was such a prohibited transaction and he assisted in this effort. For the reasons set forth in the preceding subsection regarding the Third Cause of Action against him, he is also liable to the plaintiffs on the Fourth and Fifth Causes of Action.

### 4. Sixth Cause of Action.

This cause of action alleges that Attorney DePerno violated ERISA § 406(b) (29 U.S.C. § 1106(b)) as a fiduciary with respect to the Fund. *Complaint,* ¶¶ 49 and 50. For the

reasons set forth in subsection 1 regarding the First Cause of Action, Attorney DePerno was not a fiduciary. Therefore, plaintiffs' Sixth Cause of Action is also dismissed against him.

### D. Patricia DePerno.

#### 1. Third Cause of Action.

■ As with her husband, this cause of action alleges that Mrs. DePerno:

Knowingly participated in Trustee DePerno's breach of fiduciary obligation to discharge his duties with respect to the Plan solely in the interests of the participants and beneficiaries, and for the exclusive purpose of providing benefits to participants and their beneficiaries expecting what they would benefit as a result of his fiduciary duty.

*Complaint,* ¶ 41. She was not the owner of the Inn. She is not an attorney. She was never employed by the Fund. She is the wife of Attorney DePerno, and was the daughter-in-law of Trustee DePerno. She also worked and supervised employees at the Inn. There is no claim that she is a fiduciary. She was, however, a party in interest under ERISA § 3(14)(F) (29 U.S.C. § 1002(14)(F)).

The only manner in which she could be liable is if she had "knowledge as to the primary violator's [Trustee DePerno], status as a fiduciary and knowledge that the primary's conduct contravenes a fiduciary duty. *See* Restatement Torts § 876(b)." *Diduck,* 974 F.2d at 282–83. Also, she must participate in the fiduciary's breach by either affirmatively assisting, helping to conceal, or failing to act when required to do so. *Id.,* at 284.

Mrs. DePerno's participation consisted of talking to the cooks and Carmen DePerno about when and if they would be available to work at the Inn in the spring or in sending the cooks to Uncle Carmen in the fall. As with her husband, the benefits to her in this arrangement, if any, were *de minimis.* She did not know if the cooks were needed at the Fund building during the winter months. There is no proof that she knew, or should have known, that Trustee DePerno was a

fiduciary under ERISA or was violating his fiduciary duties. The minimum acts of aid which she performed were not enough to impose liability. They were not the proximate cause of Trustee DePerno's breach. Because of the failure to demonstrate either Mrs. DePerno's knowledge or participation in Trustee DePerno's breach, this cause of action must be dismissed as against her.

### 2. Fifth Cause of Action.

For the very reasons set forth in the preceding section, she was not a knowing participant in Trustee DePerno's breach of ERISA § 406(a)(1)(C) and (D) (29 U.S.C. § 1106(a)(1)(C) and (D)), this cause of action must also be dismissed as against Mrs. De-Perno.

### V. Damages.

#### A. Compensatory damages.

ERISA § 409(a) (29 U.S.C. § 1109(a)) provides:

> Any person who is a fiduciary with respect to a Plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to the Plan *any losses to the Plan resulting from each such breach,* and to restore to such Plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate. (emphasis added).

■ The liability of a knowing participant, such as Attorney DePerno, in a fiduciary breach is joint and several with the breaching fiduciary (Trustee DePerno). *Lowen,* 829 F.2d at 1220. The compensatory damages, if any, are the same for both Trustee DePerno and Attorney DePerno. *Diduck v. Kaszycki & Sons Contractors, Inc.,* 774 F.Supp. 802, 813 (S.D.N.Y.1991), *aff'd in part, rev'd in part, Diduck,* 974 F.2d 270.

■ The plaintiffs contend that the labor costs incurred by the Fund in employing the cooks from 1981 to 1986, is the loss to the Plan. This employment expense was $45,-484.15.[5] Defendants answer that no loss was incurred.

The four cooks who worked for the Fund in the wintertime all punched time clocks. They were only paid for hours they actually worked. Some of the maintenance duties these men performed were vacuuming floors and carpets, mopping floors, sweeping floors, stripping and rewaxing floors, cleaning mirrors and glass, cleaning bathrooms, salting and shovelling steps and sidewalks, rearranging storage rooms, setting up Christmas and other parties, and other general duties. The two regular maintenance workers were sometimes assigned to other nonmaintenance duties for short periods of time during the winter.

Unlike the defendants' burden of proof on the issue of whether or not the services were necessary, "[i]t is fundamental that proof of damages is part of a plaintiff's burden, including the burden to prove that the damages claimed to have been suffered were caused by the wrong claimed to have been committed." *Diduck,* 974 F.2d at 289 (Newman, J., dissenting). Although it is true that the record indicates there were substantially more hours expended on maintenance work during those years than in other years, that does not necessarily mean that the Fund did not receive the benefit of the work performed by the cooks during the winters of 1981–1986. It has been argued that this may have even resulted in savings to the Fund since the regular maintenance workers were not paid overtime and were available for other tasks which resulted in additional benefits to the Fund.

■ The Pension Fund also paid the cooks for the maintenance work at the building on a 50/50 basis with the Fund. The Pension Fund trustees elected not to join this action against the DePernos under ERISA. They must have had the opinion that the Pension Fund did not sustain any loss as a

---

**5.** The total expense was $90,968.30. The Fund paid for one-half and the Pension Fund paid the other half.

result of Trustee DePerno hiring the cooks. When fund assets have been misappropriated, Trustees have "a duty to investigate the possibility of a lawsuit and make an informed decision whether or not to pursue that action." *Diduck v. Kaszycki & Sons Contractors, Inc.,* 874 F.2d 912, 918 (2d Cir.1989). Otherwise, they would have had an obligation to seek recovery from the DePernos. *Katsaros,* 744 F.2d at 280 (Trustees breached their fiduciary duty in failing to recover monies due to the trust fund). When only one of two Funds in identical positions elects to bring a lawsuit such as this, it gives pause to question whether this litigation has a motive other than any monetary loss to the Plan. It appears that this action was commenced to establish the point that no fiduciary violation can be ignored, even if there is no provable loss.

Although it was improper for Trustee DePerno to hire *these* men, it would not have been improper if he had hired others to do the same tasks. Otherwise, every hiring decision would be subject to ERISA scrutiny as to whether it was "necessary". The ERISA violations in this case were because of *who* he hired (i.e., employees of his son—parties in interest), and *why* he hired them (because they were referred to Carmen DePerno by his son).[6] Yet the work of the seasonal maintenance workers was reasonable, beneficial, helpful, and useful to the Fund; and they were hired for reasonable compensation. Therefore the hirings did not create any tangible loss to the Fund. If the cooks did not come forward, Trustee DePerno may very well have hired others.

Therefore, the proof does not demonstrate that the Fund was worse off financially as a result of Trustee DePerno's breach in hiring the cooks. *Etter v. J. Pease Constr. Co.,* 963 F.2d 1005, 1009 (7th Cir.1992); *Leigh,* 727 F.2d at 137. It would be speculation to assess any actual loss. As a result, the plaintiffs having failed in their burden to show that the breach of fiduciary duties by Trustee DePerno caused any damage or loss to the

Plan, nominal damages in the sum of One Dollar ($1.00) will be awarded.

**B.** *Punitive damages.*

The Second Circuit has recently held that punitive damages are not available in an ERISA action pursuant to § 502(a)(2) and (3). *Diduck,* 974 F.2d at 286.

**C.** *Restitution of compensation to Attorney DePerno.*

The plaintiffs also seek the return of *all* compensation paid to Attorney DePerno as the Fund's attorney from 1981–1986. This was in the sum of $515,187.00. Defendants answered that this claim is without foundation.

Most of the cases cited by the plaintiffs involved a trustee/fiduciary who was guilty of gross misconduct, unfaithfulness, neglect, and mismanagement. *See Marshall v. Snyder,* 1 Employee Benefits Cas. (BNA) at 1888 (*quoting In re Polansky,* 41 F.2d 547 (S.D.N.Y.1930)); *Wright v. Nimmons,* 641 F.Supp. 1391 (S.D.Tex.1986); *Westwood Chemical Co. v. Kulick,* 570 F.Supp. 1032 (S.D.N.Y.1983). Attorney DePerno, however, does not fall into the category of a trustee/fiduciary. *See,* § IV(C)(1), *supra.*

The only case cited by plaintiffs involving an attorney is *Whitfield v. Lindemann,* 853 F.2d 1298 (5th Cir.1988), *cert. denied, sub nom, Klepak v. Dole,* 490 U.S. 1089, 109 S.Ct. 2428, 104 L.Ed.2d 986 (1989). In that case the court held that the district court did not abuse its discretion in requiring the attorney to reimburse the plan for compensation which he received. Although it is not entirely clear, it appears as if this was compensation received by the attorney for his services in the very transactions in which he was found to have knowingly participated in a trustee's breach of a fiduciary duty. Attorney DePerno received no compensation from the Fund as a result of any of the events in this case.

There is no claim that the legal services performed by Attorney DePerno to the Fund

---

**6.** The liability under ERISA is not because he knowingly hired maintenance workers who did

not provide services and benefits to the Fund.

over the years were not performed in a competent and professional manner. He has a reputation in the community as an excellent labor and union lawyer. It would be unfair and unjust to require him to make full restitution because of his activity in this matter which he never attempted to conceal, and which resulted in little or no benefit to himself, and no loss to the Fund. Attorney DePerno's participation in Trustee DePerno's breach was not connected to his legal representation of the Fund, nor did it arise out of any activity in which Attorney DePerno had a fiduciary duty. The court will not strip Attorney DePerno of legal fees that were obtained wholly independent of the actions which gave rise to this lawsuit.

### D. *Attorneys' fees.*

 Courts, including the Second Circuit, have established a five factor test as a guide in determining whether to award attorneys' fees in a given case. The governing factors are: (1) the offending (losing) party's bad faith or culpability; (2) whether the action was filed to confer a benefit on plan members generally; (3) whether an award of fees would deter others from acting similarly under like circumstances; (4) the relative merits of the party's position; and (5) the ability of the offending party to pay the fees and costs. *Ford v. New York Cent. Teamsters Pension Fund*, 506 F.Supp. 180, 183 (W.D.N.Y.1980), *aff'd*, 642 F.2d 664 (2d Cir. 1981); *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987).

The plaintiffs have proven the bad faith or culpability of Trustee and Attorney DePerno. However, they have failed to prove any liability on the part of Mrs. DePerno. In receiving only nominal damages, the plaintiffs have generally failed to confer a benefit on Plan members. Therefore, the court does not feel that the plaintiffs are prevailing parties, and thus are not entitled to attorneys' fees. Since all of the defendants were represented by the same counsel, the court assumes that there is a unity of interest between the defendants. Because the defendants did not prevail in the defense of Trustee and Attorney DePerno, they are also not prevailing parties. The court will not award attorneys' fees to the defendants. The relative merits of the parties' positions are equal, and an award of attorneys' fees to either side would have no deterrent affect.

### VI. *Conclusion.*

The Estate of Rocco F. DePerno, is liable to the plaintiffs for violating ERISA §§ 404, 406(a) and 406(b) (29 U.S.C. §§ 1104, 1106(a), and 1106(b)), and Rocco A. DePerno is liable as a knowing participant. Nominal damages are awarded against them in the sum of One Dollar ($1.00). The complaint against Patricia DePerno is dismissed. Neither side is awarded attorneys' fees.

The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.