The NEW YORK STATE TEAMSTERS COUNCIL HEALTH AND HOSPITAL FUND, and Everett L. Campbell, James M. Carlton, Ronald Morin, Victor C. Olivadoti, Paul E. Bush, Dawson Cunningham, Frank Posato, and Anthony Simoes, as Trustees of the New York State Teamsters Council Health and Hospital Fund, Plaintiffs,

v.

The ESTATE OF Rocco F. DePERNO, Rocco A. DePerno, and Patricia DePerno, Defendants.

No. 88–CV–1035.

United States District Court, N.D. New York.

July 8, 1994.

Morgan, Lewis & Bockius, Washington, DC, for plaintiffs (Peter Buscemi, of counsel).

Emil M. Rossi, Syracuse, NY, for defendants (Michael J. Vavonese and Roger W. Bradley, of counsel).

### MEMORANDUM–DECISION AND ORDER

HURD, United States Magistrate Judge.

### I. *Introduction.*

This action was commenced on October 4, 1988, by plaintiffs alleging violations of the Employee Retirement Income Security Act ("ERISA") during the period of October 1981, through March 1986. The court, after conducting a four day bench trial and upon receipt of post trial briefs, concluded that defendants Rocco F. DePerno ("Trustee De-Perno") and Rocco A. DePerno ("Attorney DePerno") had violated several sections of ERISA. *New York State Teamsters Council Health & Hosp. Fund v. Estate of DePerno,* 816 F.Supp. 138 (N.D.N.Y.1993) [hereinafter *Teamsters I* ]. The court also held that plaintiffs failed to prove any damages resulting from defendants' breach of their fiduciary duties, and thus awarded One Dollar in nominal damages. *Id.* at 150–51.

On appeal, the Second Circuit affirmed as to the liability of defendants, but reversed on the damage award. *New York State Teamsters Council Health & Hosp. Fund v. Estate of DePerno,* 18 F.3d 179 (2d Cir.1994) [hereinafter *Teamsters II* ]. The Circuit held, for the first time, that the principles of trust and fiduciary law should be applied in the ERISA context. *Id.* at 182. Once the Fund trustees establish a prima facie case of an ERISA violation, it is the party to the self-dealing who bears the burden of proving that their breach did not cause damage to the ERISA fund. *Id.* at 183. In the instant case then, the issue on remand is whether or not under all the circumstances, the defendants have carried their burden of proving "that the

services rendered by the two additional maintenance workers were *reasonably necessary." Id.* (emphasis added).

### II. *Discussion.*

At all relevant times, Carmen DePerno, who was Trustee DePerno's brother and is Attorney DePerno's uncle, was the head of the security and maintenance department at the Health and Hospital Fund's ("Fund") administrative offices. Prior to July 1981, there were two full-time maintenance workers for the care of the building. In July 1981, one of these men, Joseph Pendolf, was fired by Trustee DePerno. There is no evidence that this firing was done for the purpose of opening a temporary position for a cook from Attorney DePerno's Sea Shell Inn ("Sea Shell").[1] In any event, after the firing, Carmen DePerno was left with only one full-time experienced maintenance worker. He complained bitterly to Trustee DePerno about being unable to do the job with only one man, and he even threatened to quit. Therefore, in September 1981, the Fund hired one Sea Shell cook, Charles DeCosty, and in December 1991, a second cook, Joseph Longo, as temporary maintenance workers. These two temporary maintenance workers left the employment of the Fund in March 1982, and returned as cooks at the Sea Shell.

Thereafter, in April 1982, a second full-time maintenance worker was hired by the Fund. Replacing an experienced full-time maintenance worker over the winter of 1981/82 with two temporary inexperienced maintenance workers was reasonably necessary. Further, the value of services rendered by these men were at least equal to the sums paid by the Fund. Therefore, the defendants have met their burden of proving that the employment of these two cooks and the corresponding expense for that first winter was reasonably necessary under all the

---

1. There was some dispute at trial about why Pendolf's employment was terminated. Al Sgaglione ("Sgaglione"), the Fund's executive administrator, testified that Trustee DePerno ordered him to fire Pendolf because he was the brother of the other maintenance worker, Larry Pendolf, and Trustee DePerno did not want rela-tives employed by the Fund. Attorney DePerno, on the other hand, testified that it was Al Sgaglione who fired Pendolf without first consulting Trustee DePerno. This dispute is of no import, however, since neither side claims that Pendolf was fired to make room for the Sea Shell cooks.

circumstances.[2] The Fund had always operated with two full-time maintenance workers. The two full-time maintenance workers, Larry Pendolf and James Brockway, have continued to work for the Fund from that time until the present.

In the years 1982–1985, two cooks from the Sea Shell continued to be rehired as maintenance workers at the Fund's administrative office building each fall upon the seasonal closing of the Sea Shell. Charles DeCosty and Joseph Longo returned for the 1982/83 and 1983/84 winter months. William Dyer and John VandenBosch were hired for the 1984/85 winter months, and returned for the 1985/86 winter months. In the Fall of 1986, Sgaglione, who had objected to hiring additional maintenance workers at the beginning, decided, most likely because of Trustee DePerno's declining influence at the Fund, that it was unnecessary to hire any additional maintenance workers for the upcoming winter months. Since that time, no additional maintenance workers have been hired for the winter months.

This court held in *Teamsters I* that Trustee DePerno did not act "solely in the interest of the participants and beneficiaries of the Fund" when he hired the Sea Shell cooks, thereby breaching his fiduciary duties to the Fund in violation of 29 U.S.C. § 1104(a). Trustee DePerno furnished a service and caused Fund assets to be transferred to parties in interest in violation of 29 U.S.C. § 1106(a)(1)(C & D) when he hired the Sea Shell cooks. Trustee DePerno further violated 29 U.S.C. § 1106(b) because the hiring of the Sea Shell cooks caused a conflict of interest between the Fund and his fiduciary duty. *Teamsters I*, 816 F.Supp. at 144–47. Attorney DePerno was found to have violated ERISA because he knowingly participated in his father's fiduciary breach. *Id.* at 148–49.

Faced with the question of damages, this court further clarified its reasons for finding ERISA violations. The violations were "not because [Trustee DePerno] knowingly hired maintenance workers who did not provide services and benefits to the Fund," *Id.* at 151

n. 6, but "because of *who* he hired (i.e., employees of his son—parties in interest), and *why* he hired them (because they were referred to Carmen DePerno by his son)." *Id.* at 151 (emphasis in original). Liability under ERISA attached then, not because Trustee DePerno hired unnecessary maintenance workers, but because he hired employees of his son that were referred to him by his brother. "It would not have been improper if [Trustee DePerno] had hired others to do the same tasks." *Id.*

In deciding the amount of compensatory damages to be awarded, if any, this court held that "the work of the seasonal maintenance workers (i.e., the Sea Shell cooks) was reasonable, beneficial, helpful, and useful to the Fund; and they were hired for reasonable compensation." *Id.* at 151. In each year in question, defendants proved that the Sea Shell cooks were paid only for the days that each worked, i.e., these were not no-show jobs. The Sea Shell cooks performed routine maintenance duties such as "vacuuming floors and carpets, mopping floors, sweeping floors, stripping and rewaxing floors, cleaning mirrors and glass, cleaning bathrooms, salting and shoveling steps and sidewalks, rearranging storage rooms . . . and other general duties." *Id.* at 150. Since there was no proof that the Sea Shell cooks did not perform maintenance duties, their employment did not create any tangible loss to the Fund.

The Circuit's remand requires this court to determine whether the employment of the two additional maintenance workers, and the corresponding expense was "fair and reasonable under all of the circumstances." *Teamsters II*, 18 F.3d at 183. In order to meet their burden of proving that the employment of the cooks was fair and reasonable, defendants must prove that the "services rendered by the two additional maintenance workers were reasonably necessary." *Id.* Unlike the liability stage, which focused on who and why parties in interest were hired, the focus at the damages stage is whether it was reasonably necessary to hire additional mainte-

---

**2.** Sgaglione did acknowledge that he was told by Trustee DePerno in 1981 that Longo and DeCosty would be hired because Carmen DePerno "said he needed them and Carmen was in charge of that section." (Sgaglione Test. at 258; 263)

nance workers, and whether they actually rendered services to the Fund.

At this point, a matter of clarification is in order. In *Teamsters I*, in deciding whether Trustee DePerno was entitled to take advantage of the exemption contained in 29 U.S.C. § 1108(b), this court held that Trustee De-Perno had "not proven that additional maintenance workers were needed during the winter months." *Teamsters I*, 816 F.Supp. at 146. That is, defendants did not meet their burden of proving that hiring additional maintenance workers was necessary during the winter months. In order to avoid ERISA liability, a breaching party must prove that their actions with a party in interest was "for services necessary for the operation ... of the plan," 29 U.S.C. § 1108(b), if no more than reasonable compensation was paid. This implies that to avoid *liability*, in each year they rehired the cooks, the defendants must justify that it was necessary for the operation of the plan that *these* cooks be employed as maintenance workers. As stated in *Teamsters I*, there was no evidence that the hiring of *these* particular cooks was necessary during the winter months because they possessed some unique skill or special qualities "that made them indispensable for the job." 816 F.Supp. at 146.

On the other hand, in order to prove that the Fund suffered no *damages* because of the breach, the party to the self-dealing must prove that the services rendered by the additional maintenance workers were reasonably necessary. This means that in order to prove that the additional maintenance workers were reasonably necessary, the defendants must show that there was a legitimate reason to rehire the cooks in each year, and that they actually rendered services to the Fund. It is only because the court previously found that Trustee DePerno violated his fiduciary duty to the Fund when he hired parties in interest, that the court must decide whether defendants have met their burden of proving both that the decision to hire the cooks was based on legitimate reasons, and that they rendered actual services to the Fund.

When he hired the additional maintenance workers, Trustee DePerno acted on the advice of Carmen DePerno, who was insistent that he be provided with extra help during the winter months. In fact, Carmen DePerno once threatened to quit if he was not provided with additional maintenance workers. (C. DePerno Test. at 474) Carmen DePerno was head of maintenance and security, and it was his job to determine just how many maintenance workers were needed to upkeep the building and the surrounding grounds. It was his opinion that he "definitely" needed the additional maintenance workers each fall. (*Id.* at 473; 475) Although plaintiffs offered the testimony of Sgaglione who initially disagreed with the decision to hire additional maintenance workers, he did not object to hiring the Sea Shell cooks in the years following 1981.

More important, however, Sgaglione was not in charge of maintenance and security during the years in question. Trustee De-Perno deferred to the experience of his brother Carmen in deciding to hire additional maintenance workers for the winter months, and it was reasonable for Trustee DePerno to rely on Carmen DePerno's expertise.[3] This conclusion does not end the court's inquiry, however. Because the court found that Trustee DePerno violated his fiduciary duty to the Fund when he hired parties in interest, the court must first decide whether defendants have proven that the hiring of the additional maintenance workers during the winter months was for legitimate reasons.

The employment of the additional maintenance workers was reasonably necessary because even when the Fund employed four maintenance workers, the regular full-time maintenance workers continued to receive overtime; i.e., the presence of the Sea Shell cooks did not cause duplication of work. An attempt to reduce overtime is a legitimate reason to hire additional workers. In years subsequent to 1981/82, the Fund regularly and continuously paid significant amounts of

---

**3.** Although Trustee DePerno had an independent duty to investigate how Fund monies were to be expended, it was not necessary to personally inspect the premises to determine if the building was being properly maintained; that was the duty of Carmen DePerno.

overtime to the full-time maintenance workers.[4] A few examples include: during the week ending January 27, 1984, Pendolf logged 25 overtime hours, while Brockway logged 4.5 overtime hours; in the weeks ending November 16 and 24, 1984, Pendolf logged 19.5 and 19 overtime hours respectively, while Brockway logged 19 and 10 overtime hours respectively; and in the weeks ending January 11 and 18, 1985, Pendolf logged 27 and 25 overtime hours respectively, while Brockway logged 25 overtime hours in each week. Given the number of overtime hours and the fact that there were at least four maintenance workers employed at the Fund, there was obviously not only necessary maintenance work to be done, but a need to reduce overtime maintenance hours. This happened when the additional maintenance workers were employed at the Fund.

For example, in August and September 1984, the two months prior to the employment of Dyer and VandenBosch for the upcoming winter months, Pendolf and Brockway logged more than 300 hours in overtime (Pltf's. Trial Exs. 11, 12), at overtime pay rates of $19.28 and $16.37 per hour respectively.[5] By contrast, in October and November 1984, when Dyer and VandenBosch were employed, overtime hours paid to Pendolf and Brockway amounted to approximately 200 hours. Since Dyer and VandenBosch were hired in October 1984, at a rate of $8.14 per hour, the Fund saved nearly $1000 in overtime wages because of the additional maintenance workers. The two Sea Shell cooks hired for the winter months at a lower wage undoubtedly saved overtime hours which were paid at one and a half times the regular wage.

In rebuttal, at trial, plaintiffs offered the testimony of Sgaglione, who disagreed with the initial decision to hire additional maintenance workers, and argued that the hiring of additional maintenance workers was unnecessary due to the fact that the amount of maintenance hours dramatically decreased in the years following 1985, the last year the Sea Shell cooks were rehired for the winter months. However, there is no doubt that the decision to hire the Sea Shell cooks was a violation of ERISA. Both this court and the Second Circuit have determined that such a conclusion is "well supported by the record." *Teamsters II,* 18 F.3d at 182. However, it was a legitimate reason to hire these additional maintenance workers in an attempt to reduce the massive overtime being earned by Pendolf and Brockway. Even if the total maintenance hours did decrease in the years following 1985, it was still reasonable to attempt to reduce the overtime hours of the regular maintenance workers at the time.

Moreover, as discussed briefly above, during at least six different time periods in the years 1982–86 (three of which were winter months) there was at least one other maintenance worker employed by the Fund besides Pendolf, Brockway, and the cooks. During the winter months of 1982/83, David Murad was hired as a maintenance worker which made a total of five maintenance workers from October 1982 through March 1983.[6] This situation occurred once more during the period in question. From November 11, 1985, through February 14, 1986, Joseph Murad joined the two full-time maintenance workers and the two Sea Shell cooks, VandenBosch and Dyer.

The court is satisfied that the cooks were hired for legitimate reasons in all five winter seasons. During 1981–82, it was to replace the dismissal of a regular full-time maintenance worker. For the 1982–85 winter seasons, it was to reduce or at least attempt to keep reasonable overtime hours of work for the two full-time maintenance workers who were paid at time and a half. The cooks

---

4. During the years in question, there is no indication that any significant amount of overtime hours logged by Pendolf or VandenBosch was due to special projects or other unusual circumstances. Therefore, the court assumes that any overtime paid out, especially given the fact that Pendolf and VandenBosch regularly earned such overtime, was due to the normal and regular demands of the job.

5. The overtime hours of Pendolf and Brockway were in addition to the hours of John Murad, who worked from July 9, to August 24, 1984.

6. David Murad continued to work part-time as a maintenance man until August 1983.

were, of course, hired for the legitimate reason to perform routine maintenance work.

The court must now decide whether the cooks rendered actual services to the Fund. As this court has previously held, the services of the cooks were "reasonable, beneficial, helpful, and useful to the Fund. . . ." *Id.* at 151. The four Sea Shell cooks, none of whom are currently in the employ of either party, testified that they performed one or more of the following tasks: vacuuming floors and carpets, mopping and sweeping floors, polishing furniture, stripping and re-waxing floors, cleaning mirrors and glass, cleaning bathrooms, salting and shoveling steps and sidewalks, re-arranging storage rooms, and performing other general janitorial duties. (Longo Test. at 124–25; DeCosty Test. at 143; VandenBosch Test. at 155); *Id.* at 150. DeCosty testified that each night upon reporting for work he was given a list of tasks to accomplish before the end of his shift. (DeCosty Test. at 143) Longo testified that there was always something to be done. (Longo Test. at 125) All the evidence indicates that the cooks performed janitorial tasks that needed to be accomplished. Therefore, the services rendered by these additional maintenance workers were reasonably necessary because the tasks were of such a nature that they would have been completed even in the absence of the Sea Shell cooks.

The plaintiffs have offered no evidence to cast doubt on the fact that the cooks actually performed maintenance work. There is no evidence that the cooks did not work each day. In fact, this court has previously determined that the cooks were paid only for the days that each worked, i.e., they were not no-show jobs. Additionally, the cooks performed routine maintenance duties as noted above.

Since the defendants have proven that the additional maintenance workers were reasonably necessary, they "must prove that the value of their reasonably necessary services at least equaled the sums paid. . . ." *Teamsters II,* 18 F.3d at 183. This question need not detain the court for long. The only evidence with regard to the salary of the maintenance workers is that they were paid the low end of the wage scale. Therefore, they were paid with a reasonable wage, and were paid only for the work they actually performed.

## CONCLUSION

"[T]he work of the seasonal maintenance workers (i.e., the Sea Shell cooks) was reasonable, beneficial, helpful, and useful to the Fund; and they were hired for reasonable compensation." *Teamsters I,* 816 F.Supp. at 151. There is no disputing the fact that Trustee DePerno violated his fiduciary duty to the Fund. In such a case, ERISA demands that he make the Fund whole for any and all losses it may have suffered because of his actions. However, the Fund was not injured because of the employment of the Sea Shell cooks hired as maintenance workers during the 1981–85/86 winter months. Because the defendants have proved by a preponderance of the evidence that the cooks were hired for legitimate reasons, that they performed actual work for the Fund, and were paid a reasonable wage, they have met their burden that the services rendered were reasonably necessary.

Therefore, upon remand, plaintiffs are again awarded the sum of One Dollar in nominal damages due to the fact that defendants have proven that the Fund suffered no loss because of their breach of fiduciary duty. For the same reasons set forth in *Teamsters I,* 816 F.Supp. at 152, there is no award of attorneys fees and expenses, except those relating to the successful defense of the counterclaims. *Teamsters II,* 18 F.3d at 183. A separate order will follow on that issue.

The Clerk is directed to enter judgment accordingly.

SO ORDERED.